# Richmond.

## TOMPKINS, RECEIVER, v. DEYERLE & OTHERS.

### JANUARY 14, 1904.

1. JUDICIAL SALES—*Resales—Failure of Commissioner to Give Bond—
   Clerk's Certificate to Advertisement.*—The provisions of section
   3398 of the Code, requiring commissioners to give bond before
   selling property under a decree of court and to append the cer-
   tificate of the clerk to the advertisement showing that the bond
   has been given applies to all judicial sales, whether original or
   resales, and a purchaser who seeks to avail himself of the pro-
   tection afforded by section 3399 of Code must show either that
   the commissioner to whom payments were made actually gave
   the bond required of him, or that the clerk's certificate that such
   bond had been given was appended to the advertisement.  The
   commissioner is not authorized to collect the purchase money
   where another has been appointed for that purpose, though the
   purchaser is protected if the proper certificate of the clerk is ap-
   pended to the advertisement of the sale, and he has no notice of
   the subsequent appointment of another.

2. JUDICIAL SALES—*Resale—Purchase by Surety of First Purchaser—
   Bond of Commissioner—Clerk's Certificate.*—A purchaser of land
   at a resale made in a judicial proceeding is not entitled to credit
   for payments made to a commissioner who has failed to account
   for the same, where it appears that the commissioner was not
   required to give any bond as commissioner to resell, and he
   neither gave any such bond nor appended to the advertisement of
   resale the clerk's certificate that such bond was given.  The fact
   that a bond was required of and given by the same commissioner
   before making the original sale, and that the surety of the pur-
   chaser at the original sale became the purchaser at the resale
   cannot change the result.  The resale, though a means of enforcing
   the collection of the balance due on the first sale, was not such a
   collection of the bond given at the first sale as would be protected
   by the publication of the clerk's certificate annexed to the adver-
   tisement of the first sale.

Appeal from a decree of the Circuit Court of Montgomery county, in the chancery suit of *Norcross* v. *Davis and Others,* in which appellant was appointed a receiver to collect certain bonds given for deferred payments of real estate sold under decree in said cause. The decision of the Circuit Court being adverse to the receiver, he appealed.

*Reversed.*

The opinion states the case.

*A. A. Phlegar,* for the appellant.

*Robert E. Scott* and *W. W. Moffett,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

At the May term, 1884, of the Circuit Court for Montgomery county, a decree was entered in the case of *Northcross* v. *Davis' Heirs,* directing James C. Taylor and George G. Junkin, who were appointed commissioners for the purpose, to sell certain real estate, and providing that either or both of them might act, but before doing so they should execute bond in the penalty of five hundred dollars, conditioned as the law directs. They advertised the land directed to be sold, appending to their advertisement of sale the clerk's certificate that the bond required had been given. One parcel of the land was purchased by George T. Gross, who paid the cash payment required, and executed bonds for the deferred payments, with A. T. Gross and A. J. Deyerle as his sureties. This sale, with another made under that advertisement, was reported to and confirmed by the court at its November term, 1884. At the same term of the court George G. Junkin, one of the commissioners to sell, was appointed receiver to collect all sale and rent bonds due under the proceedings in that cause, and was required to give bond in the penalty of ten thousand dollars. The receiver failed to give bond.

At the May term, 1887, of the court, the receiver reported to the court that Gross was in default in the payment of the purchase money due from him, and that notices had been served upon him and his sureties for a resale of the land purchased by him. At the same term of the court a decree was entered directing George G. Junkin, as commissioner, to resell the Gross land at the risk and charges of Gross and his sureties, on the terms of one-fourth cash, and the residue on a credit of six, twelve, and eighteen months, after advertising as required by the original decree for sale. That decree did not require Junkin to give bond before selling.

The land was advertised and sold by Junkin, as commissioner, and A. J. Deyerle, one of the sureties on Gross' purchase money bonds, and John H. Northcross became the purchasers, paid the cash payment, and for the residue executed bonds with sureties. This sale was reported to the court and confirmed at its November term, 1887. No order was made for the collection of those bonds until the May term, 1895, of the court, when the appellant was appointed receiver and directed to collect them. It subsequently appeared that the said Junkin had, before the appellant's appointment as receiver, collected from Deyerle and Northcross the whole of the purchase money due from them, and had failed to account for a large part thereof to the parties entitled.

After various proceedings had, which it is unnecessary here to state, the court held that the payments made by Deyerle and Northcross to Junkin were valid payments, and discharged them and the land purchased by them from further liability to the extent of such payments. From that decree this appeal was granted, upon the petition of the receiver.

Two errors are assigned, but they both raise the same question, and that is, the propriety of the court's action in holding that the payments to Junkin by Deyerle and Northcross were valid payments.

Unless the appellees come within the provisions of the Act of

February 25, 1884 (Acts 1883-4, p. 213), now found in chapter 167 of the Code of 1887 (sections 3398 to 3402, inclusive), their payments to Junkin, who had no authority either as commissioner or as receiver to collect the purchase money bonds due from them, were clearly invalid. That act was construed in part by this court in *Pulliam* v. *Tompkins,* 99 Va. 602, 604, 605, 39 S. E. 221, a controversy growing out of the same case as does this appeal. The first section of the act provides that no special commissioner appointed by a court to make sale of land shall execute the decree until he shall have given bond in such penalty as the court shall fix, with security to be approved by the court or clerk thereof, and that no such commissioner shall advertise the sale of land without first obtaining from said clerk a certificate that the bond required by law, or by the decree, has been executed, and appending such certificate or a copy thereof to the advertisement. The second section provides that when such certificate has been published with an advertisement of sale, any person purchasing such land in pursuance of such advertisement shall be relieved from all liability for the purchase money or any part thereof which he may pay to any special commissioner as to whom proper certificate shall have been appended to such advertisement. The fifth section provides that the commissioner or commissioners appointed to make the sale shall receive and collect all the purchase money, unless by decree of court some other person is appointed to collect the same, in which event the clerk is required to issue notice of such appointment to the purchaser, to be served as other notices are served, provided that if any payment is made to a special commissioner making the sale before the purchaser has notice of the appointment of another person, such special commissioner and his sureties shall be responsible for the money so paid, and the purchaser shall not be responsible therefor.

In order for a purchaser of land sold by a commissioner of court under a decree, which directed the sale to be advertised, to

bring himself within the provisions of that act so as to be pro-
tected from paying a second time where he has paid his pur-
chase money to a person not empowered to receive it, and who
has failed properly to account for it, he must show that there was
appended to the advertisement of the sale at which he purchased
the certificate of the clerk, showing that the bond required by
law or the decree of the court had been given. No bond was re-
quired by the decree directing the resale. Whether this was
because the court was of opinion that the bond required by the
decree of the May term, 1884, appointing Taylor and Junkin,
or either of them, to sell, was sufficient to authorize a resale by
Junkin, commissioner, or that the bond he was required to give
as receiver to collect would protect all parties on the resale, or
the not requiring a bond was a mere oversight of the court, is
not material. The fact that no certificate was appended to the
advertisement of the sale at which Deyerle and Northcross pur-
chased ought to have, and in contemplation of law did, put them
on inquiry as to the authority of Junkin to collect the purchase
money bonds executed by them. The Act of February 25, 1884,
was not intended to protect, and does not protect, purchasers
of lands at judicial sales in their payments of purchase money to
persons not authorized to receive it, and who fail properly to
account for it, unless the facts exist upon which this protection
is by the act made to depend.

The fact that the sale at which Deyerle and Northcross pur-
chased was a resale does not protect them. The language of the
act applies to all judicial sales made by special commissioners,
appointed by decree or order of court to sell land. It is just as
important that the parties in interest should be protected by a
proper bond on a resale as on an original sale. In saying this,
however, it is not to be understood that the court may not re-
quire the special commissioner appointed to make the original
sale, to give bond sufficiently broad to cover not only the original
sale, but any resale made by him. This is the practice in some

of the circuits of the State. If such bond be required and given under the original decree of sale, there would be no difficulty in the clerk making the required certificate and in the special commissioner appending it to his advertisement of resale.

The appellees' counsel insist that if Deyerle had paid the purchase money bonds of Gross, upon which he was surety, to Junkin, commissioner, without a resale of the land, the payment would have been valid, under the decision in *Pulliam* v. *Tompkins, Receiver, supra,* and that as the resale at which the appellees purchased was to collect the same debt, its payment after the resale must also be valid, since the said commissioner was expressly authorized to "receive and collect."

Conceding that if Deyerle had paid his principal's debt to Junkin, commissioner, without a resale, his payment would have been valid, it by no means follows that a payment of the resale purchase money bonds by the appellees to Junkin, commissioner, was valid. One of the vices of the appellees' contention is that Junkin, commissioner, was authorized to "receive and collect" purchase money bonds given by Gross, upon which Deyerle was surety. Junkin was not authorized to receive and collect either the purchase money bonds given at the original sale, or those given at the resale. By the terms of section 5 of the Act of February 24, 1884, the commissioner to sell is authorized to receive and collect all the purchase money, unless by decree or order some other person be appointed to collect the same, in which case the court shall require of such person bond in such penalty as it may see fit. In this case, Taylor and Junkin, commissioners, had no authority to "receive and collect" the purchase money bonds for the land sold by them, because the court at the very term at which it confirmed the sales made by them appointed Junkin receiver, to collect those bonds. After the decree was entered appointing Junkin receiver, neither Taylor and Junkin, as commissioners, nor either of them, had any authority as such to receive and collect said bonds. The

decision in *Pulliam* v. *Tompkins, Receiver,* was not based upon the ground that Junkin, commissioner, had any authority or right to collect the Barnett bonds, but upon the ground that the certificate of the clerk that bond had been given as required by law was appended to the advertisement of the sale at which Barnett, Pulliam's vendor, had purchased, that the purchase price was paid to one of the special commissioners who made the sale, and that neither Barnett nor Pulliam had notice that Junkin had been appointed receiver to collect the purchase money.   The purchaser of land at a judicial sale made by a special commissioner, whether it be an original sale or a resale, must ascertain before paying the purchase money to such special commissioner, either that the special commissioner has actually given the bond required by law or that he appended to his advertisement of sale the clerk's certificate that such bond had been given.   If the purchaser can show that either of these facts exist, then he is fully protected in paying to such special commissioner until he has notice that some other person has been appointed to collect on the same.

Again, this contention proves too much.   If it were true that a special commissioner to sell has the right to resell the land without giving bond to cover such resale, because he has authority to "receive and collect" the original purchase price, it would follow that if at the resale the land did not bring a sufficient sum to pay the original purchase price, and it became necessary to get judgment for the deficiency, and to sell other lands of the purchaser or his sureties to pay such deficiency, the special commissioner could sell that land, and collect the purchase price without giving a new bond, and thus bind his sureties on the original bond for any default which he might make. In addition, notwithstanding Deyerle's denial that he had notice that Junkin had been appointed receiver, it quite clearly appears from the record that he must have known that Junkin, commissioner, was not authorized to receive and collect the money due

from him, either as surety for Gross, or as purchaser of the land when resold. The decree which appointed Junkin receiver, removed Deyerle as receiver in the cause, gave a personal judgment in favor of Junkin, the new receiver, against Deyerle, and directed him to turn over all rent bonds in his hands or proceeds thereof to Junkin, the new receiver. By the report of Commissioner Harless, settling the account of Junkin as commissioner and receiver, it appears that Deyerle, receiver, obtained credit as of May 11, 1886, for $128.94 paid or turned over to Junkin, receiver, under the decree removing the one and appointing the other receiver. But whether he had notice or not, neither he nor his co-purchaser, Northcross, were justified in paying their purchase money bonds to the said Junkin, nor are they entitled to credit therefor on the purchase price of their land further than the money so paid was properly accounted for by him.

The decree appealed from must, therefore, be reversed and the cause remanded to the Circuit Court for further proceedings to be had in accordance with law, and not in conflict with this opinion.

CARDWELL, J., dissenting.

I cannot concur in the conclusion reached by a majority of the court in this case. From my understanding of the record, the learned judge who entered the decree under review, was plainly right in the view stated in his written opinion, made a part of the record, that the fact that Deyerle, who was a surety for Gross, paid the amounts that he paid after a resale of the land, instead of before, did not exclude him from the benefit of the principle announced by this court in *Tompkins, Receiver, v. Pulliam,* 97 Va. 602, 39 S. E. 221.

The bond executed by Taylor and Junkin, commissioners, pursuant to the decree of the May term, 1884, authorizing either of them to act upon the giving of the bond, omitting the formal part and the signatures and seals thereto, is as follows:

"The condition of the above obligation is, whereas the above bound James C. Taylor and Geo. G. Junkin, hath been appointed commissioners of Montgomery Circuit Court to sell land in suit of *E. P. Northcross* v. *W. H. Davis' Heirs:*

"Now, if the said J. C. Taylor and Geo. G. Junkin shall faithfully discharge the duties of their office or trust as commissioners as aforesaid, then the above obligation is to be void, else to remain in full force and virtue."

Upon the execution of the bond and the attachment to their advertisement of the sale of the land the required certificate of the clerk that the bond had been given, Taylor and Junkin, or either of them, were authorized to receive all the purchase money for the land sold until by decree in the cause some other person was appointed to collect the same, and notice of such appointment served upon the purchaser as required by the statute, the statute expressly providing that if any payment be made to a special commissioner making the sale before the purchaser has notice of the appointment of another person to collect it, such special commissioner and his sureties shall be responsible for the money so paid, and the purchaser shall not be responsible therefor. Acts of 1883-4, p. 213.

At the sale by Taylor and Junkin, commissioners, pursuant to the decree of the May term, 1884, one of the parcels of land sold was purchased by J. W. Barnett, who made his cash payment and executed his bond for the three deferred payments. The decree of the May term, 1887, recognized P. B. Pulliam as substituted purchaser of part of the land bought by Barnett, and directed Junkin, as commissioner, to unite with Barnett and wife in a deed to Pulliam. Pursuant to this decree, Junkin, commissioner, and Barnett and wife conveyed the land to Pulliam, reserving to Junkin, as *Receiver,* a vendor's lien for unpaid purchase money. The entire purchase price of the land was paid by Barnett and Pulliam, the cash payment to Taylor and Junkin, and the deferred payments to Junkin.

In *Tompkins, Receiver,* v. *Pulliam, supra,* in which it was sought to have Pulliam repay so much of the purchase money for the land he bought through Barnett as was necessary to make up for the default of Junkin in not accounting for the money received of Pulliam and others, the court reviewing the Act of February 25, 1884 (Acts of 1883-'4, p. 213), entitled "An act to provide for the protection of purchasers at, and other persons in, judicial sales," held, that as the sale by Taylor and Junkin, commissioners, under the decree of the May term, 1884, was after the passage of the Act of February 25, 1884, *supra,* and the required copy of the certificate from the clerk appended to and published with the advertisement of their sale of the lands, and the purchase price of the land bought by Barnett, subsequently transferred to Pulliam, having been paid in full by Barnett and Pulliam, to one of the special commissioners who had made the sale, and the payments made without notice of another person having been appointed to collect them, Pulliam was relieved from all liability; "otherwise," says the opinion, "the law which was intended for his protection would be converted into a trap for his destruction." In other words, the opinion in that case, after reviewing the statute, holds that Commissioners Taylor and Junkin, having complied with the statute as to the bond required of them and appended to their advertisement of the sale of the land by them, a copy of the certificate of the clerk that the bond had been given, they were authorized to receive the whole purchase money until the purchaser was notified, as the statute required, that some other person had been appointed by the court to collect it, and that a payment to these commissioners, or either of them, by a purchaser, without such notice, was a valid payment, and absolved him from further liability therefor.

It will be observed, therefore, that the only features in the case at bar differentiating it, if at all, from that just quoted from are (1) the decree of the resale of the Gross land as a

means of collecting the purchase money due by Gross and his sureties therefor, remaining unpaid, one of the sureties being Deyerle, appellee here; and (2) the provision in the decree of the November term, 1884, removing Deyerle as receiver in the cause, charged only with the duty of collecting certain rents, and requiring him to turn over to Junkin, appointed receiver to collect both rent and purchase money bonds, the rent and money bonds then in the hands of Deyerle.

The statute, now section 3398 of the Code, is: "No special commissioner appointed by decree or order of court, or of a judge in vacation, to sell or rent any property, shall advertise the property for sale or renting, or sell or rent the same until he has given bond," etc.; and the decree of the May term, 1887, does not appoint a special commissioner to sell the Gross land, but merely directs Junkin, as commissioner appointed by the decree of the May term, 1884, and authorized to collect all of the purchase money for lands sold under that decree until some one else was appointed to collect it, and notice of the appointment of such person served on the purchasers, to resell the Gross land for the unpaid purchase money due for it and "at the risk and charges of Gross and his sureties," who were liable for the unpaid purchase money bonds given for the deferred payments at the original sale. The payment of the purchase money at this resale, evidenced as to the deferred payments by three bonds, not payable to Junkin as receiver, but as "Commissioner of the Circuit Court of Montgomery county, in the suit of *Northcross* v. *Davis' Heirs,*" was but a payment of the purchase money bonds due on the original sale of this land, which Junkin, commissioner, was undoubtedly authorized to collect, it not being pretended that Deyerle, who was bound as surety therefor, had been served with the required notice of the appointment of Junkin as receiver in the cause. As said by the learned judge below, if Deyerle had paid the bonds to Junkin, upon which he was bound as surety for Gross, before the resale, such payment would have been good. *Tompkins, Receiver, v. Pulliam, supra.*

It has not been the practice in this State, so far as I am advised, to require a commissioner already appointed and qualified to receive the whole of the purchase money for land sold in a cause, to give a bond before proceeding to execute a decree merely directing him to resell the land for the unpaid purchase money due therefor, and only as a means of collecting it. The learned judge who entered the decree of the May term, 1887, of long experience on the bench, considered it unnecessary to require a new bond of Commissioner Junkin, who was thereby directed to resell the Gross land.

How it can be said in the opinion of the court that payments made to Junkin, commissioner, by Deyerle, before notice to him as required by the statute, of Junkin's appointment as receiver in the cause, were not valid payments absolving Deyerle from further liability therefor, when payments made to Junkin by Pulliam under the same circumstances were held in *Tompkins, Receiver,* v. *Pulliam, supra,* to be valid payments, absolving Pulliam from further liability therefor, I am wholly unable to comprehend. Nor can I agree that because the decree of the November term, 1884, appointing Junkin receiver to "collect all rent and sale bonds due under the proceedings in this cause," removed Deyerle, as receiver, to collect the rents only from the lands under the control of the court before their sale and required him to turn over to Junkin the rent and rent bonds then in his hands. This case is differentiated from that of *Tompkins, Receiver,* v. *Pulliam, supra,* when in the last-named case the deed to Pulliam from Junkin and others, as we have seen, reserved to Junkin, as *Receiver,* a vendor's lien on the land conveyed for unpaid purchase money which was afterwards paid to Junkin as commissioner, and held by this court to be valid payments, notwithstanding Junkin never gave the bond required of him as receiver, the decision absolving Pulliam from liability to repay the same resting on the ground that Pulliam was protected by the provisions of the statute of February 25, 1884, *supra.*

The object of the statute was to protect purchasers at judicial sales from the hardship to which they had been so often subjected of having to pay their purchase money twice. It was the purpose of the Legislature, clearly expressed in the statute, to avoid such injustice, by laying down the only terms upon which a purchaser should be held to pay again his purchase money. If the express provisions of the statute may be avoided, because of a decree of resale of land, as a means of collecting unpaid purchase money due therefor, or because inferences may be drawn from an old decree in the case that Deyerle, who was a surety for the unpaid purchase money for the land resold, must have known that Junkin had been appointed a receiver to collect the unpaid purchase money for the lands sold under the decree of the May term, 1884, and required to give a bond as such receiver; or because Commissioner Junkin gave no bond as the commissioner to resell the Gross land, none being required of him by the decree of resale; then the door is thrown open and not only the letter, but the entire spirit of the statute may be rendered nugatory, and it would be better for the purchaser, if the statute had not been enacted, for it is thus made to operate as a snare, rendering it necessary for purchasers to examine records and decrees (as of old), and determine for themselves, at their peril, whether or not they can safely pay.

*Reversed.*